CASE 27—AGREED CASE—NOVEMBER 28.

# City of Owensboro v. Weir, Weir & Walker.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. POWER OF MAYOR OF CITY TO EMPLOY COUNSEL.—The mayor of a city has no power either to authorize litigation on behalf of the city or to control it unless the emergency be serious and the necessity grave and impending.

    Where the charter of a city gave the common council control of all property of the city, with power to prohibit persons from trespassing upon or injuring its public grounds, the mayor alone had no power to authorize the bringing of a suit in the name of the city to enjoin the county from inclosing grounds belonging to the city, or to employ counsel to assist in the prosecution of such a suit, and for services rendered by counsel under such an employment the city can not be required to pay.

2. RATIFICATION BY CITY COUNCIL.—Although the vote of the council upon a motion to allow the claim of the attorney shows that an appropriation was refused merely because there was a disagreement as to the amount, still it can not be regarded as a ratification of the mayor's employment. It shows at most but a willingness upon the part of a majority of the council to make some appropriation in compromise of the claim.

3. NO SEPARATION BY THE COURT OF ITS CONCLUSIONS OF LAW AND FACT IS NECESSARY to the prosecution of an appeal where a case is tried upon an agreed state of facts.

J. A. DEAN FOR APPELLANT.

The general rule is that the mayor can not bind the city by the employment of an attorney without the concurrence of the council. (Memphis v. Adams, 9 Heisk (Tenn.), 518; s. c., 24 Am. Rep., 331; Bryan v. Page, 51 Tex., 532; s. c., 32 Am. Rep., 637; Carroll v. St. Louis, 12 Mo., 444, cited and approved in 15 Am. and Eng. Ency. of Law, 1119; Butler v. Charleston, 7 Gray (Mass.), 14, cited and approved in 15 Am. and Eng. Ency. of Law, 1121.)

And it makes no difference that the attorneys were ignorant of the lack of authority on part of the mayor to bind the city. (1 Dillon Mun. Corp., secs. 445, 447; Craycraft v. Selvage, 10 Bush, 707.)

There is not in the case at bar any emergency that would bring it within the exception to the general rule as announced in the case of City of Louisville v. Murphy, 86 Ky., 65.

City of Owensboro v. Weir, Weir & Walker.

C. S. WALKER FOR APPELLEES.

1. The mayor had the power to employ counsel. (City of Memphis v. Adams, 9 Heisk, 518; s. c., 24 Am. Rep., 336, 337.)

In City of Louisville v. Murphy, 86 Ky., 65, this court did not intend to decide that the power of the mayor to employ counsel was dependent upon an emergency, but only that the exercise by him of such power should be seldom and in exceptional cases.

The mayor has absolute, full power to determine every question within the province of his office; and if his authority to do a certain act is conditional upon an emergency, he is, of necessity, the sole judge of the existence of such emergency, and his decision in regard to it is conclusive. (1 Dillon's Mun. Corp. (4th ed.), secs. 94, 95, 475, and 2d ed., 832.)

This view is in harmony with the decisions in analogous cases. (4 Am. and Eng. Ency. of Law, p. 383; Washington County Court v. Thompson, 13 Bush, 239; 1 Dillon's Mun. Corp., sec. 25; Idem, sec. 66, p. 108.)

2. If emergency be the test of the power of the mayor to employ counsel, and if the mayor be not the judge of what constitutes an emergency the emergency was decidedly greater in this case than in City of Louisville v. Murphy.

3. The city council knew that appellees looked to appellant for compensation for their services and it received them without giving any information that it would not pay for them, and it seems, even in this view of the case, that appellant is liable. (Savings Bank v. Benton, 2 Met., 244; 1 Dillon's Mun. Corp. (4th ed.), sec. 465, note.)

The power of the mayor to employ counsel is like that of the president of a bank. (1 Morse on Banks and Banking, sec. 143, b.)

4. There is a distinction between the employment of counsel to institute an action, and to assist in its prosecution after it has been regularly instituted in the name of the city by and through its properly constituted agents or officers. In the former case the doctrine that counsel must inquire into the authority of the officer to employ him applies, but in the latter case he has the right to assume that the action itself was duly authorized, and hence that his employment was legal.

5. The proceedings of the council upon the claim were a ratification of the employment. (City of Memphis v. Adams, 9 Heisk, 518; s. c., 24 Am. Rep., at page 333.)

6. A separation of the conclusions of law and fact is required in an agreed case in order to the prosecution of an appeal. (Civil Code, secs. 332, 637, 639.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The question involved on this appeal is the liability of the appellant, City of Owensboro, for the fee of the

appellees—attorneys at law—for services rendered by them at the employment of the mayor of the appellant acting without the authority of the city council.

The circumstances of the employment are set forth in an "agreed case" and in the record in which the services were rendered.

The county judge of Daveiss County, under an order of the county court to that effect, was proceeding to have inclosed under fence certain outlying grounds adjacent to the court-house square in the city of Owensboro. It may be presumed that this was being done with a view of obtaining permanent possession of the grounds about to be inclosed and of depriving the city of them, but it is not intimated that any act was about to be done which would injuriously affect the property, or that the county was about to commit any waste thereon, or carry off any portion thereof, or even to erect any buildings thereon. It had in fact only placed a number of stones thereon with the view of erecting a fence. It may be presumed that the mayor in good faith believed that the grounds about to be inclosed belonged to the city. Upon this state of case the mayor, acting alone, authorized the city attorney to institute proceedings against the county authorities enjoining them from interfering with the grounds mentioned. This the attorney sought to do by filing a petition as ordinary in the Daveiss Circuit Court on the 11th day of April, 1889, but no injunction was granted him because of want of notice. The mayor then—still acting alone and without the authority of the city council—employed the appellees to assist in the prosecution of the case. Without inquiry as to the source of their employment beyond that obtained from the mayor, they filed an amended

City of Owensboro v. Weir, Weir & Walker.

petition, praying that the title of the plaintiff city in and to the grounds described be quieted, the stones be removed and the county be prevented from extending its fence around the disputed territory. This was done two days after the original petition had been filed. Before their motion for an injunction was heard, at an informal meeting held by the members of the council, the city attorney was instructed to dismiss the suit, which he did. While the statement appears in the "agreed case," and is set forward rather prominently in the argument of the appellees, that the appellees were not advised of the fact that the suit had been brought at the instance of the mayor without the authority of the council, or that the employment of the appellees was without such authority, we do not understand the appellees to contend that their cause of action can be maintained by reason of their ignorance of the authority under which, or by virtue of which, the mayor assumed to act in the premises stated. We assume it to be conceded that persons contracting with a corporation, or with its officers, must inquire into the power of the contracting body or person to make the impending contract. But it is contended that when the county officials commenced to remove the fence inclosing the court-house yard so as to take in ground in the possession of and belonging to the city, and when the city attorney had failed to present his case so as to obtain the relief sought, then an emergency arose which authorized the mayor to employ counsel; and that there was no time or necessity to convene the city council. But looking at the case from this standpoint—that of the exigency of the occasion—we are not so impressed with the gravity of the alleged emergency as counsel seem to be. The main

object sought to be determined by the litigation set on foot in the Daveiss Circuit Court was to quiet the title of the city to the ground in controversy. This was in no way affected by the proposed erection of the fence. By inclosing, the county did not become the owner of the property. As expressing our view on this point, we quote the apt language of the Superior Court (14 Ky. L. R., 711, Yost, judge) in determining this case then on appeal there; "A piece of ground which the mayor claimed was the property of the city was about to be inclosed. What right had he, the executive of the city government, to act alone in the matter? Why not call together the common council, and let that body act or refuse to act, at its pleasure? In it, and not in him, was vested the control of the property of the city, and the power to prevent any and all encroachments upon its streets or public squares. Yet with these powers so pointedly and specifically given the legislative branch of the city government, the executive, in the face of the prohibition of the charter, attempted to exercise an authority properly belonging to the other. . . . There was certainly no emergency in this case. The common council could have been at once called together. There was absolutely no reason for the mayor to act alone. While the amount charged was small and well earned, yet there is a principle involved important indeed to all municipalities, and we do not think, unless the emergency be serious and the necessity grave and impending, that the mayor should have the power either to authorize litigation in behalf of the city or to control it. A different rule of law would, in effect, dangerously enlarge and broaden the power of public officers to bind municipalities by contracts not only unauthorized, but

prohibited." This would seem to leave nothing further to be said under this head.

The common council, by the charter of the city, session Acts 1881, vol. 1, page 817, is given control of the finances and all property, real and personal, belonging to the city; power to prohibit persons from trespassing upon or injuring its public grounds; to appoint all agents necessary to carry into effect its laws and ordinances, and to prevent and remove any and all encroachments into or upon any street, alley, sidewalk, avenue or public square of the city, and to exercise complete and perfect control over all public squares or commons belonging to the city, and over all its property, real or personal, within or beyond its limits. The mayor is empowered to see that the laws of the city are faithfully executed, and shall, from time to time, give to the common council information of the state and condition of the corporation, and recommend to its consideration such measures as he may deem expedient, and for that or any other purpose may call special meetings of that body whenever it is, in his opinion, necessary to the interest of the city.

But while invoking the aid of the principle that pressing necessity justified the employment, and insisting that an emergency existed, calling into exercise the power of the mayor to act, counsel yet argue that emergency can not give the power, however great; though it may, and likely ought to, regulate its exercise. If the power exist, it is absolute, independent and inherent in the office itself. If it does not exist, no contingency, no emergency, no necessity, can create it. That if emergency be taken as the test of the power, not the courts, but the mayor, must be

City of Owensboro v. Weir, Weir & Walker.

the judge of what constitutes a sufficient emergency! And the conclusion of the argument of the learned counsel is that the mayor has absolute, full power to determine, not (as we might suppose from the tendency of the argument) the circumstances or emergencies under which he might properly act, but to determine every question *within the province of his office!* And to all this we agree. Within the province of his office the acts of the mayor must be confined. Emergency can not create a power; but when a state of case arises in which the performance of the duties of his office is involved, he may lawfully act. This state of case, or emergency, if we call it such, calls into exercise this action. But his action must be within the scope of his powers as laid down in the law creating him. The power of the mayor is defined in the law creating the office, not in express terms, because there are implied powers; but in all cases the power must be worked out through and under the law creating the office.

The case of City of Louisville v. Murphy, 86 Ky., 53, is relied on as conclusively sustaining the contention of the appellees. In that case it is said : "While as a general rule the mayor of a city has no authority by virtue of his office to employ counsel, the power being conferred by the charter or by the legislature of the city, cases of emergency may arise, when the power must necessarily exist. It is made the duty of the mayor to see that the law and ordinances of the city are faithfully executed, and that the official duties of the city officials are faithfully performed. In this case the council had failed to impose any tax. The city was left without means, as the mayor had the right to suppose, of carrying on the city government. The officials were proceeding to collect a

tax without any ordinance of the city council. In such an emergency he called on counsel for advice. We think such a power existed. We think the mayor has no general power to authorize litigation in behalf of the city or to control it. If so, he could disregard the legislative will of the municipality, bringing and dismissing suits at his pleasure. It is certainly an exceptional case where it should be allowed, and one that seldom arises; but the emergency in this case justified the act, as all the parties acted no doubt in the best of faith." In that case, a state of case arose—called an emergency in the opinion—in which the performance of the official duties of the officers of the city and the power of carrying on the city government were involved. We can not see that it supports the contention of the appellees, and think that it is in accord with the views here expressed. It was an extreme case —and this action to quiet title and to prevent an encroachment on the realty of the city does not approach it in its demand for immediate action.

It is insisted that a ratification of the action of the mayor is shown by the vote of the council on the motion to allow the claim of the appellees. The claim being before the council for action thereon, the proceedings are thus stated: "Whereupon, Mr. Decker moved that Mr. Walker be allowed $50 as a fee in the litigation, which was lost by the following vote, viz., ayes, Messrs. Decker, Norton, Hill; noes, Messrs. Smith, Gransz, Stirman, and Mayor Hickman. Messrs. Stirman and Gransz then moved that Mr. Walker be allowed the full amount of his claim, $150, which was rejected by the following vote, viz., ayes, Messrs. Stirman, Gransz; noes, Messrs. Decker, Norton, Hill and Smith."

We are asked to suppose—and it may be so figured out pretty clearly—that those who voted "no" as to the $50, except Smith, did so because they did not consider that sum enough, and that those who voted "no" as to the $150, except Smith, did so because they considered it too much, and that therefore no appropriation was made because they disagreed as to the amount only. But how this is to be construed into a recognition of the mayor's employment, we can not see. After all, the vote shows no ratification, though it might show that a majority of the members were willing to make some appropriation in compromise of the claim of the attorney.

But, say the appellees with earnestness, there was no statement by the court of its conclusions of fact found, separately from its conclusions of law.

Section 332 of the Civil Code provides that "upon trials of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case, the court shall state in writing the conclusions of fact found, separately from the conclusions of law."

Now upon an agreed state of fact, what could the court do in the way of stating "in writing the conclusions of fact found separately from the conclusions of law?" Simply copy or re-state the agreed state of fact! Clearly the court's judgment on the law only was asked. There was no *trial* of questions of fact. The case of Harris v. Ray, 15 B. M., 629, cited by counsel, simply determined that the provisions of the Code regulating applications for

.a new trial applied to judgments by default. It has no bearing on the section quoted.

Judgment reversed, with directions to proceed in accordance with this opinion.