# Broadway & Newport Bridge Company v. Commonwealth.

(Decided January 11, 1917.)

## Appeal from Campbell Circuit Court.

1. Bridges — Interstate Bridges — Right of State to Regulate Toll On. — A bridge for foot passengers across the Ohio river be-tween the State of Kentucky and the State of Ohio, is an inter-state bridge and Congress may regulate the rates of toll thereon; but in the absence of congressional legislation on the subject the States of Ohio and Kentucky may by identical and reciprocal legislation fix the rates of toll thereon.

2. Bridges—Interstate Bridges—Right of State to Regulate Toll on. —In the absence of identical legislation by the two States regula-ing and fixing the rates of toll, the State of Kentucky cannot regu-late and fix the rate of toll for foot passage over the bridge.

3. Bridges—Interstate Bridges—Right of State to Regulate Toll on. —The reciprocal legislation of the two States that will authorize each to fix a rate of toll must be such legislation as establishes the same rates of toll for passage over the bridge, and until such a joint rate is adopted by both States, neither State can enforce penalties against the bridge company for violation of the rate of toll it has fixed.

4. Constitutional Law—Police Power—Regulation of Interstate Com-merce.—The State of Kentucky, under its police power, has not the authority to fix rates of toll that an interstate bridge com-pany may charge for foot passengers.

5. Appeal and Error—Exceptions, Bill of—Motion and Grounds for a New Trial—Practice—Dismissal of Appeal.—The mere fact that the record in a common law, criminal or penal case does not con-tain a bill of exceptions or a motion and grounds for a new trial is no ground for dismissing the appeal. The complaining party may if he chooses bring his common law, or his criminal, or his penal case here without a motion for a new trial or a bill of excep-tions.

6. Appeal and Error—Exceptions, Bill of—Practice—Office of Bill of Exceptions.—The sole purpose of a bill of exceptions is to bring before this court the things that transpired on the trial that do not appear on the record book of the trial court. It is not neces-sary to put in a bill of exceptions, pleadings, orders or motions that appear on the order book.

7. Appeal and Error—Exceptions, Bill of.—If nothing occurred on the trial to which the complaining party desired to make an objection or save an exception, no bill of exceptions is necessary, and all that the complaining party need do is to bring to this court a bill or transcript of the evidence.

8. Appeal and Error—Exceptions, Bill of—Practice—Absence of Bill of Exceptions.—If a record is brought to this court without a bill

of exceptions, the court will consider the evidence, but it will be presumed that the court did not commit any error in the admission or rejection of evidence, and the only question will be, was the pleading and evidence sufficient to support the verdict?

9. Appeal and Error—Reversal When There is no Bill of Exceptions. —If the pleadings do not support the judgment, or there is no evidence to support the judgment, there may be a reversal notwithstanding there is no bill of exceptions, because no litigant is entitled to have a judgment unless he first states a cause of action and supports it, if it is put in issue, by evidence.

10. Appeal and Error—Agreed Facts—Bill of Exceptions Not Necessary.—Where a case is submitted to the court on an agreed state of facts, and nothing occurred at the trial to which the complaining party could make an objection or save an exception, a bill of exceptions is not necessary. When there is no objection or exception, all that the complaining party need do is pray an appeal from the judgment on the agreed facts.

11. Appeal and Error—Motion and Grounds for a New Trial—Practice.—It is not necessary to enable a party to prosecute an appeal that he should file a motion and grounds for a new trial, although if he fails to do so he cannot avail himself on the appeal of many errors that may have been committed during the progress of the trial and that should have been pointed out in the motion and grounds for a new trial.

12. Appeal and Error—Motion and Grounds for a New Trial—Effect of Absence of—Practice.—In the absence of a motion and grounds for a new trial, nothing is before this court for review on appeal except the inquiry as to whether the petition states a cause of action and whether the evidence presented by the bill of evidence authorizes the judgment. If the petition did not state a cause of action, or if the evidence is wholly insufficient to support the judgment, we may reverse the case, although there is no motion and grounds for a new trial.

13. Appeal and Error—Motion and Grounds for a New Trial—Agreed Facts—Practice.—Where a common law case is submitted on an agreed state of facts, and the only ground relied on for reversal is that the agreed facts are wholly insufficient to support the judgment of the court, we may look into this in the absence of a motion and grounds for a new trial.

NELSON & GALLAGHER for appellant.

M. M. LOGAN, Attorney General; D. O. MYATT, Assistant Attorney General, and LAWRENCE J. DISKIN, Commonwealth Attorney, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The Broadway and Newport Bridge Co. is a consolidated corporation created under section 843 of the

Kentucky Statutes, and is a citizen of the State of Kentucky. It was formed by the consolidation of the Broadway and Newport Bridge Co., an Ohio corporation, and the Newport and Broadway Bridge Co., a Kentucky corporation. It maintains and operates a bridge across the Ohio river connecting Newport, Ky., and Cincinnati, O., which is used, in connection with other traffic, by foot passengers. Section 845, of the chapter under which this corporation was created, provides that it shall be unlawful for it or any other like bridge corporation to demand, charge or receive for foot passengers more than five cents for five crossings; or, in other words, the limit that the company may charge foot passengers who secure five tickets is five cents, or one cent for each crossing. But, notwithstanding this limitation, it appears that the company sold only four tickets entitling the purchaser to one crossing each for five cents, and the grand jury of Campbell county returned against it the indictment before us for violating in the manner stated, the statute.

After a demurrer to the indictment had been overruled, the case was submitted to the court on an agreed state of facts, and the court found the company guilty and assessed against it a fine of five hundred dollars as prescribed in the statute. From the judgment thus entered it prosecutes this appeal.

It appears from the agreed facts that the company is now and has been at all times selling only four tickets for five cents, each ticket entitling the purchaser to one crossing. It further appears that section 9312 of the Civil Code of Ohio authorizes toll to be collected on consolidated bridges over the Ohio river, and that this toll shall at no time exceed that collected at the Covington and Cincinnati bridge. It further appears that the rates of toll charged by the Covington and Cincinnati Bridge Co. for passage over said bridge are more than five cents for four tickets.

It will thus be seen that under the agreed state of facts the Ohio statute authorizes consolidated bridge companies such as the Broadway and Newport Bridge Co. to charge and collect more than five cents for four tickets, while the Kentucky statute provides that these consolidated bridge companies shall not charge more than five cents for five tickets. It will further be observed that this company charges more than the Ken-

tucky statute authorizes but less than the Ohio statute permits.

On these facts, the only question in the case involving the merits is, has the State of Kentucky the power to regulate the rates of toll for foot passengers on this bridge?

In the case of Covington and Cincinnati Bridge Co. v. Commonwealth of Kentucky, decided by the Supreme Court of the United States and reported in 154 U. S. 204, 38 L. Ed. 962, it appears from the opinion that the bridge company operated a bridge across the Ohio river between Covington, Ky., and Cincinnati, O., and that an indictment was found against the bridge company by the grand jury of Kenton county, Ky., for demanding and collecting tolls in excess of the rate fixed by the Kentucky statute, and refusing to sell tickets at the rates required by law. It further appears that this bridge company was incorporated under an act of the legislature of Kentucky which required the confirmation of the act by the State of Ohio, and that thereafter by an act of the Ohio legislature the company was made a body corporate in that state. For a violation of the statute of this State fixing the rates of toll that might be charged, the bridge company was fined in the Kenton Circuit Court, and the judgment of that court having been affirmed by this court, the case was taken to the Supreme Court of the United States, which court reversed the judgment of this court, and in the course of the opinion, after holding that the bridge was an instrument of interstate commerce, said:

"It is clear that the State of Kentucky, by the statute in question attempts to reach out and secure for itself a right to prescribe a rate of toll applicable not only to persons crossing from Kentucky to Ohio, but from Ohio to Kentucky, a right which practically nullifies the corresponding right of Ohio to fix tolls from her own state. It is obvious that the bridge could not have been built without the consent of Ohio, since the north end of the bridge and its abutments rest upon Ohio soil; and without authority from the state to exercise the right of eminent domain, no land could have been acquired for that purpose. It follows that, if the State of Kentucky has the right to regulate the travel upon such bridge and fix the tolls, the State of Ohio has the same right, and so long as their action is harmonious

there may be no room for friction between the states; but it would scarcely be consonant with good sense to say that separate regulations and separate tariffs may be adopted by each state (if the subject be one for state regulation), and made applicable to that portion of the bridge within its own territory. So far as the matter of construction is concerned, each state may proceed separately by authorizing the bridge company to condemn land within its own territory, but in the operation of the bridge their action must be joint or great confusion is likely to result."

After further pointing out the confusion that might exist by the enactment of inharmonious or conflicting legislation by the states of Kentucky and Ohio as to the manner in which the bridge should be operated and the rates of toll that should be charged thereon, and saying that "Congress, and Congress alone, possesses the requisite power to harmonize such differences, and to enact a uniform scale of charges which will be operative in both directions," the court said:

"We do not wish to be understood as saying that, in the absence of congressional legislation or mutual legislation of the two states, the company has the right to fix tolls at its own discretion. . . . . Nor are we to be understood as passing upon the question whether, in the absence of legislation by Congress, the states may by reciprocal action fix upon a tariff which shall be operative upon both sides of the river."

It is agreed by counsel that there is an absence of congressional legislation on the subject of the rates of toll that may be charged for passage over this bridge, and we think the opinion of the Supreme Court authorizes us to rule that if the states of Ohio and Kentucky enacted by reciprocal legislation laws fixing the rates of toll that might be charged foot passengers on this bridge, the State of Kentucky would have authority to maintain a prosecution against the bridge company for charging rates in excess of those fixed by the statute of each state, but that in the absence of such reciprocal action by the states of Kentucky and Ohio the courts of Kentucky have no power to impose penalties on the company for a violation of the Kentucky Statutes. Having this view of the matter, it only remains to be determined whether the states of Ohio and Kentucky have joined in the enactment of legislation fixing like rates of toll for passage over this bridge.

The solution of this question is to be determined by the agreed state of facts, and we think it apparent from these facts that there has been no such reciprocal legislation by the two states as would meet the requirements demanding such legislation before either state can enforce its penal statutes against bridge companies for charging excessive rates of toll in violation of the laws of either of the states. According to the agreed state of facts under the Kentucky statute, the bridge company must sell five tickets for five cents, while under the Ohio statute it may charge five cents for four tickets, or even more than five cents for four tickets. This mere statement is of itself, we think, sufficient to illustrate that there has been no reciprocal legislation on this subject between the two states. A person desiring to go from Newport to Cincinnati could, under the Kentucky law, demand five tickets for five cents, entitling him to passage from Newport to Cincinnati, but if a citizen of Cincinnati desired to go to Newport, Ky., the bridge collector at the Cincinnati end of the bridge could require him to pay five cents, or even more, for four tickets, entitling him to passage from Cincinnati to Newport.

We think the reciprocal legislation contemplated by the opinion of the Supreme Court must be such legislation as established precisely the same rates of toll for passage over the bridge from Newport to Cincinnati as from Cincinnati to Newport, and that until such a joint rate is adopted by both states, neither state can enforce penalties for violations by the bridge company of the rate of toll it has fixed.

It is, however, further insisted by counsel for the Commonwealth that in the absence of congressional legislation or reciprocal legislation between the two states, the state of Kentucky by virtue of the police power at its command, may enforce obedience to its laws by this Kentucky corporation, notwithstanding the fact that it is engaged in interstate commerce.

In South Covington & Cincinnati Street Ry. Co. v. Covington, 235 U. S. 537, 59 L. Ed. 350, the Supreme Court had before it a case involving the power of the city of Covington to enact certain ordinances regulating the operation of street cars between Covington, Ky., and Cincinnati, O. These regulations consisted in limiting the number of passengers that should be per-

mitted to ride in any car; in forbidding passengers to ride on the platforms of the cars unless they were equipped as provided in the ordinance; in requiring the company to clean and ventilate its cars at stated times; keep the temperature of the cars at a designated degree; and operate them in sufficient numbers to accommodate the public. The court, after holding that this street car company was engaged in interstate commerce, said:

"Does the case come within that class wherein the state may regulate the matter legislated upon until Congress has acted by virtue of the supreme authority given it by virtue of the common clause of the constitution? In numerous instances this court has sustained local enactments, passed in the exercise of the police power of the state, in the interest of the public health and safety, notwithstanding the regulation may incidentally or indirectly affect interstate commerce. The subject was given much consideration in the Minnesota Rate Cases (Simpson v. Shepard, 230 U. S. 352, 57 L. Ed. 511, 48 L. R. A. (N. S.) 1151, 33 Sup. Ct. Rep. 729), and the previous cases dealing with this subject are therein collected and reviewed. In the light of these cases, and upon principle, the conclusion is reached that it is competent for the state to provide for local improvements or facilities, or to adopt reasonable measures in the interest of the health, safety, and welfare of the people, notwithstanding such regulations might incidentally and indirectly involve interstate commerce." And then proceeded to rule that so much of the ordinance as limited the number of passengers that might be carried in any car, and that made it the duty of the company to operate a sufficient number of cars to accommodate the public, was an interference with interstate commerce, which it was not within the power of the city of Covington to regulate or control, but that so much of the ordinance as referred to passengers riding on the platform, as well as the provision with reference to keeping the cars cleaned, ventilated and fumigated, might be treated as a police regulation which was within the power of the city of Covington to impose.

To what extent the states may go in the regulation of interstate commerce through the means of what is known as the police power, is a question involved in much uncertainty, but we think that under the police

power the State of Kentucky has not the authority to fix the rates of toll that this interstate bridge company may charge, in the absence of congressional legislation on the subject. If it did have such power, it could, of course, establish reasonable rates of toll, and, likewise, under the same power the State of Ohio could fix reasonable rates of toll. But unless the rates of toll fixed by the two states were the same, we would have the same condition that now exists, and a person going from Newport to Cincinnati might be charged one rate and a person going from Cincinnati to Newport might be charged another rate. But, aside from the confusion that this conflict in rates would produce, it does not seem to us that a state, by virtue of its police power, has the authority to regulate charges in interstate commerce. To give to the police power of the states this measure of authority would enable the states, each acting for itself, to adopt such rules and regulations as to each might seem desirable, and embarrass interstate commerce with burdens which we do not think it is within the power of the states to impose. In fact, it seems to us quite clear that the right of one state to fix the rate of tolls upon this bridge was expressly denied in the Cincinnati and Covington Bridge Company case, *supra,* although it should be said that the authority of the state in respect to matters like this under the police power of the state was not considered by the court or referred to in the opinion. See also Port Richmond & Bergen Point Ferry Co. v. Board of Chosen Freeholders, 234 U. S. 317, 58 L. Ed. 1330, in which case the ruling in the Covington Bridge case was approved.

A question of practice is raised in this case that should be disposed of. There is no motion and grounds for a new trial and no bill of exceptions in the record, and on this state of the record a motion was made by the Commonwealth to dismiss the appeal, which motion was passed to be heard with the merits. It may, at the outset, be observed, that the mere fact that the record in a common law case, or in a criminal or penal case, does not contain a motion and grounds for a new trial, or a bill of exceptions, is no ground for dismissing the appeal. The complaining party may, if he chooses, bring his common law, or his criminal, or his penal case here without either a motion for a new trial or a bill of

exceptions. If he chooses to adopt this practice, as he may do, his course of procedure will not work a dismissal of his appeal. It will only result in many questions being eliminated from the consideration of this court that might have been considered if the record were accompanied by a motion and grounds for a new trial and a bill of exceptions. As was said in Postal Telegraph Cable Co. v. Louisville Cotton Oil Co., 136 Ky. 843:

"The sole purpose and office of a bill of exceptions is to bring before this court a record authenticated by the trial judge of things that transpired in the trial court that do not appear on the record book of the trial court. It is not necessary to put in the bill of exceptions the pleadings, orders of court, or any motion or paper that is mentioned in the orders of court as having been offered or filed as a part of the record, although it may not be copied on the record book, as the fact that it is there mentioned is sufficient evidence of its identification to make it a part of the record for this court when copied by the clerk, accompanied by his certificate."

So that in a common law case tried by a jury, or in a case in which the law and facts are submitted to the court without the intervention of a jury, if nothing has occurred on the trial to which the complaining party desired to or did make an objection or save an exception, no bill of exceptions is necessary for the simple reason that the party did not think it proper to object or except to anything that the court did in the progress of the trial or to anything that happened during the course of the trial, and, therefore, in such a case, all that the complaining party need do, and indeed all that he can do, is to bring to this court a bill of evidence, or what is usually called a transcript of the evidence, properly certified to by the trial judge, in which transcript the instructions given by the court may be inserted, as was held in the Postal Telegraph Cable Co. case, or the instructions may be put in a separate bill of exceptions properly signed and certified to by the trial judge.

Much of the confusion in respect to bills of exceptions grows out of the practice or habit of calling the transcript of the evidence a bill of exceptions, or speaking of bills of exceptions and transcripts of evidence interchangeably and as meaning the same thing. But,

in truth, they are very different things. The transcript of the evidence may not contain anything except the evidence that was introduced on the trial. It may not have in it any objection or any exception. But a bill of exceptions is, strictly speaking, only a record or transcript that points out alleged errors committed by the trial court in relation to evidence as well as to other things. Under the modern practice these objections and exceptions usually appear in the transcript of the evidence at the appropriate place, and this practice has contributed to the confusion that comes up in calling the bill or transcript of the evidence a bill of exceptions, because, excepting errors in respect to the instructions, the majority of errors relate to questions of evidence.

. As illustrating this, we find in Cook v. Commonwealth, 13 Ky. L. R. 702, the court saying, when the testimony was not in the record, that "there is, however, no bill of exceptions. . . . . In the absence of a bill of exceptions the action of the court in the conduct of the trial will be presumed to have been correct, and the evidence sufficient to support the verdict." And the judgment was affirmed. In that case the court apparently treated the failure to bring up a transcript of the evidence as the same thing as having no bill of exceptions, when the transcript of the evidence might have been brought up without any bill of exceptions, if, as we have said, counsel did not make any objections or save any exceptions in the introduction of evidence.

Also in Gambrell v. Gambrell, 130 Ky. 714 there was no bill or transcript of evidence in the record, and this being so, the court said: "The appeal prosecuted from the judgment therefore presents but the single question, whether the judgment is authorized, or might be authorized, by the pleadings. For, in the absence of a bill of exceptions and evidence, it will be presumed that the evidence and instructions authorized the verdict rendered, provided the state of pleadings do." And manifestly this was so, because in the absence of the evidence, there could be nothing before this court to consider except the sufficiency of the pleadings to support the judgment. To the same effect are Louisville and Atlantic Coal Co. v. Morris, 132 Ky. 22; Settle v. Gibson, 147 Ky. 616; Daniels v. Compton, 151 Ky. 714; Clark v. Wallace Oil Co., 155 Ky. 836, and Tyler v. Woerner, 158 Ky. 710.

If, in a trial before a jury, the complaining party brings to this court his bill or transcript of evidence properly signed and certified, and the instructions to the jury, the court will consider the evidence precisely in the same manner as it would consider the transcript of the evidence if it contained numerous objections and exceptions touching the admission or rejection of evidence that had been made and saved. But in the absence of objections or exceptions it will of course be presumed that the court did not commit any error in the admission or rejection of evidence; and so upon this point the only question before this court would be, was the evidence sufficient to support the verdict, assuming that the pleadings were good and the instructions unobjectionable? Without a bill of exceptions—that is, a bill pointing out alleged errors committed by the trial court, or that occurred during the progress of the trial—this court will presume that no error was committed by the trial court and that no error happened during the progress of the trial, and therefore we will assume that the judgment appealed from is correct if the pleadings and the evidence support the judgment. If, however, the pleadings do not support the judgment, or there is no evidence to support the judgment, then it will be reversed, notwithstanding there is no bill of exceptions, because no litigant is entitled to have a judgment unless he first states a cause of action and supports his cause of action, if it is put in issue, by evidence.

It is a further rule of practice that all errors occurring during the trial of the case, whether made by the trial judge or brought about in some other way, must be objected or excepted to, as the case may be, at the time they occur, so that the attention of the court may be immediately directed to the complaint, and it is the proper practice to set out these alleged errors and the objections and exceptions thereto in a bill of exceptions, so that this court may consider them, and this, we repeat, is the only office of a bill of exceptions. McAllister v. Connecticut Mutual Life Ins. Co., 78 Ky. 531.

Applying these general rules to the case we have, it is apparent that no bill of exceptions was necessary, because the case was submitted to the court on an agreed state of facts, and there was nothing that occurred at the trial to which the complaining party could make an objection or save an exception, except to the judgment

of the court finding the appellant guilty on the facts, and to this judgment there was an exception saved and an appeal prayed.

Considering next the effect of the failure to file a motion and grounds for a new trial: Section 340 of the Civil Code, after declaring that "a new trial is a re-examination in the same court of an issue of fact after a verdict by a jury or a decision by the court," proceeds to point out the causes for which a new trial may be granted. The purpose of a motion and grounds for a new trial is to direct the attention of the court to alleged errors that occurred during the trial and to which an objection was made or an exception saved at the time, and also to bring to the attention of the court such other errors relied on which it might be proper to bring to its attention without a previous objection or exception, so that the trial court may have an opportunity to review the entire record and trial in the light of the alleged errors to which its attention is called by the grounds for a new trial, and, after considering them, either grant or refuse the new trial, as may seem right.

But it is not necessary to enable a party to prosecute an appeal that he should file a motion and grounds for a new trial, although if he fails to do so he cannot avail himself on the appeal of many errors that may have been committed during the progress of the trial and that should have been pointed out in the motion and grounds for a new trial. As said in Roberts Cotton Oil Co. v. Dodds & Johnson, 163 Ky. 695: "In the absence of a motion and grounds for a new trial, nothing is brought to this court for review on appeal, except the inquiry as to whether the petition states a cause of action, and whether the evidence presented by the bill of exceptions authorized the judgment. Every other error upon the trial is waived by the failure to call the attention of the trial court to it, by motion and specific grounds assigned."

If, therefore, there is no motion and grounds for a new trial, we will consider on appeal only the question whether the pleadings and evidence authorized the judgment. If the petition did not state a cause of action, or if a demurrer filed to it should have been sustained, or if the evidence is wholly insufficient to support the judgment, we may reverse the case for any of these reasons, although there is no motion and grounds for a new

trial. Thus it was said in Henderson v. Dupree, 82 Ky. 678:

"In the absence of a motion for a new trial, this court will not consider the evidence in the case as it would if it had been made; but yet it is proper to determine whether there is any testimony whatever to support the verdict or judgment, because if none, then only a question of law was presented to the judge of the lower court; and a party ought not to be required to call his attention to the fact that the adverse party has no case or defense whatever. . . . . If a party presents no reason whatever in his pleadings or by testimony against the claim of his adversary, a rule requiring the attention of the lower court to be called to it would be purely technical, without reason, and founded only upon the presumed utter incompetency of the judge. If, notwithstanding the evidence, it would have been proper in him to have instructed peremptorily against the party that has succeeded, or in effect have sustained a demurrer to the evidence, then only a question of law was presented, which, upon a consideration of the whole case, was decisive of the party's right, and ought to be considered by the appellate tribunal even in the absence of a motion for a new trial." To the same effect are Helm v. Coffey, 80 Ky. 174; The Albin Co. v. Ellinger & Co., 103 Ky. 240.

Applying to the case we have these rules of practice, it seems manifest that no motion and grounds for a new trial was necessary. The only ground upon which a reversal is asked is that the evidence exhibited in the agreed state of facts was wholly insufficient to support the finding of the court, and if the evidence is not sufficient to support the judgment, we may look into this in the absence of a motion and grounds for a new trial.

Wherefore, the judgment is reversed, with directions to dismiss the indictment.