## Allen v. Salyers.

(Decided June 8, 1928.)

### Appeal from Johnson Circuit Court.

1. Mines and Minerals.—In action by lessor against lessee of oil and gas lease under contract for division of profits on lessee's sale of the lease, option given by lessee to purchase lease at specified price to be paid at completion of well, where containing agreement of lessee to diligently carry on drilling, required that expense of completing well be borne by lessee, and cost of well was therefore required to be deducted in determining plaintiff's recovery.

2. Appeal and Error.—Failure of appellant to file motion and grounds for new trial held not to preclude right to review on appeal, where there was no evidence to support the judgment.

H. H. RAMEY for appellant.

FRED HOWES for appellee.

OPINION OF THE COURT BY COMMISSIONER WHEELER— Reversing.

On December 23, 1925, the appellee herein executed and delivered to the appellant an oil and gas lease on 500 acres of land in Johnson county, Ky.; the lease being the usual lease ordinarily executed, giving to the lessee the right to drill and develop the property for its oil and gas, together with the concomitant rights of way, etc. By the terms of the lease, the lessee (appellant herein) agreed to drill a well on the premises within one year from date of the lease or thereafter pay $1 per acre annually for rental; the same being payable quarterly in advance.

Simultaneously with the execution of the foregoing lease, the lessee (appellant herein) executed and delivered to the appellee the following writing:

"Agreement made and entered into by and between S. C. Allen of Royalton, Kentucky, party of the first part, and A. M. Salyers, party of the second part.

"In consideration of an oil and gas lease given on A. M. Salyers' farm to S. C. Allen for a period of twelve months before starting the rentals on said lease. The said S. C. Allen agrees and binds himself that he will get the very best deal possible on said lease and that he will pay to A. M. Salyers one-half of any money that he may be able to sell said lease for.

"The said S. C. Allen agrees to make A. M. Salyers a one-half owner in any interest that he may be able to retain in the said A. M. Salyers lease in case the said S. C. Allen is able to transfer said lease and retain interest in said lease. (Signed) S. C. Allen."

After the execution and delivery of the lease above referred to, as well as the writing, the appellant herein sold the foregoing lease, together with a block of leases in contiguous territory, consisting of approximately 3,-025 acres; the sale being to the Louisville Gas & Electric Company, the full consideration therefor being $13,650,

the negotiations therefor being begun on May 11, 1926, at which time the appellant herein gave an option to R. J. Graf, agent of Louisville Gas & Electric Company, the said option being as follows:

"Prestonsburg, Kentucky, May 11, 1926.

"Mr. R. J. Graf, c/o Mr. A. W. Lee, 311 West Chestnut Street, Louisville, Kentucky—Dear Sir: Pursuant to discussion with your Mr. Van Patton and Mr. T. J. Hagans here to-day, I agree, in consideration of $100.00, to give to you the exclusive right for a period of sixty days to purchase from me leases from various people in Johnson county, Kentucky, to me, list of which is attached hereto.

"If you elect to accept said acreage at the end of sixty days, I agree to commence the drilling of a well on the A. M. Salyers tract on Middle fork of Jenny's creek, within 60 days after your acceptance and to drill the same through the corniferous lime unless oil or gas is struck in paying quantities at a lesser depth. A paying well in the sense of this option is such a well as will produce at least four barrels of oil natural, after a seven-day test, or three hundred thousand feet of merchantable gas natural daily with a rock pressure of three hundred pounds. The open flow to be determined after the well had been permitted to flow at atmosphere for 72 hours without showing any decline.

"Upon the completion of said well, you are to pay me for such casing as is necessarily left in said well. In the drilling of said well, I agree to use casing, starting with 13″ conductor, approximately 250 feet of 10″; and to set 8¼ casing at such a point above the big lime as is necessary to protect the usual producing sands from water, or to facilitate drilling. If it is not necessary to run the 8¼ casing before the big lime is reached, then the casing shall be run at a point near the top of the big lime and drilling continued in the 8¼ hole. In the event the well is a producing well, you will pay me for such casing as is necessary for the proper operation of the well, at the following named prices: 8¼ casing, $1.14 per foot; 10″ casing, $1.32 per foot; 6⅝ casing, $.87 per foot; 13″ casing, $2.26 per foot.

"If you elect to accept these leases at the end of 60 days, you are to pay me the sum of $13,650.00,

of which sum $3,550.00 is to be paid at the time of the commencement of the well, and the balance due at the time of the completion of same, and I agree to diligently carry the drilling of said well to completion in a skillful and workmanship manner, it being understood that I give you credit for the $100.00 paid for this option, in the first payment above cited.

"Should it result from the examination of the titles and survey of the property that the title to a portion thereof is defective or that the acreage is less than that recited in the leases, then I will deduct from the amount to be paid to me, the sum of $2.50 per acre for all acreage less than that recited in the said lease or leases.

"Yours very truly,                    S. C. Allen."

The foregoing proposition was accepted by the Louisvllle Gas & Electric Company, and pursuant to the terms above set forth the appellant herein drilled a well on the A. M. Salyers lease into the corniferous lime; the cost of said well being $10,971.89, which was paid by the vendee of the appellant so as to release any liens against said property or claims due the workmen for labor performed in the completion thereof, and in the final settlement with the appellant for the sale of the leases above referred to this amount was deducted from the agreed purchase price, $13,650.

Also the option provided that a deduction of $2.50 per acre should be allowed in the event that the acreage should be less than called for in the leases to be ascertained by actual survey, and on the survey of the leases they did fall short in acreage a little more than 954 acres, which, at the agreed price of $2.50 per acre, amounted to $2,386.65, and this, being deducted from $13,650, leaves balance due appellant on the sale of the leases $11,263.35, with the well completed on the premises as per contract above set forth.

The appellee herein bottoms his suit upon the whole amount received from the Louisville Gas & Electric Company by the appellant, to wit, $11,263.35, claiming that this is the sale price obtained for the block of leases, and his lease of 500 acres being entitled to its proportional part of the sale price received by appellant, and alleges that he is entitled to one-half of the profits from the sale price of his lease, which is $1,071.48. The defendant by answer denied the affirmative allegations of

the petition, and pleaded the option above referred to and its acceptance by the Louisville Gas & Electric Company, and pleaded further that the cost of the drilling of the well was a part of the purchase price of the leases; that is, the Louisville Gas. & Electric Company only agreed to pay the price stated in the option with a well drilled thereon by appellant—the affirmative allegations of said answer being traversed of record by agreement of the parties.

The only proof offered was that of J. A. Yunker. taken on interrogatories and read in behalf of plaintiff, which shows the contract as herein stated and the cost of the well as above set forth, and with this testimony alone in the record a trial by jury was waived and a trial had before the presiding judge. Judgment was rendered for the appellee for the amount claimed by the petition. Appellant, being dissatisfied therewith, prosecutes this appeal.

The propriety of the judgment appealed from necessitates the construction of the contract of sale mentioned herein; the option given by the appellant to R. J. Graf, and accepted by the Louisville Gas & Electric Company, is the contract, and, from a reading thereof, it will be seen that the appellant agreed to (and thereafter did convey) convey to R. J. Graf for the Louisville Gas & Electric Company, the block of leases with the acreage hereinbefore mentioned with a well completed thereon for the agreed price of $13,650 (but with the shortage in the acreage accounted for the net sale price being $11,-263.35). The question then presented is: Should the cost of the well be deducted from the purchase price, or did the leases alone bring this price on the market when sold by appellant? It is our conclusion, after a careful consideration of the option, that the appellant herein agreed and bound himself to convey all the leases therein mentioned with a completed well thereon for the price above set forth, and in arriving at this conclusion we have but to refer to the option itself, which is unambiguous and can admit of no other construction; hence it follows that the cost of the well was to be borne by appellant to enable him to receive the full purchase price— that is, appellant agreed to complete the drilling of a well on the premises and convey the leases with the well thereon at the price of $13,650, and the cost thereof is a part of the consideration for which the leases were sold, and the cost of the well should be deducted from the

price paid to appellant for the leases with the well thereon, but, after the deduction is made, then the appellee is entitled to recover his proportional part of the balance of the sale price of the leases by reason of the execution of the writing first set out herein.

Appellee contends that the failure of the appellant to file motion and grounds for a new trial precludes his right to prosecute this appeal and have a review of the case by this court.

We have looked carefully to all the cases cited by appellee in his brief, and find the general rule to be that a motion and grounds for a new trial must be filed in order to bring the trial court's attention to any errors committed during the trial, but there are many exceptions to this rule. A very elaborate discussion of this question will be found in case of Board of Drainage Commissioners of Ballard County et al. v. Illinois Central Railroad Co. et al., 202 Ky. 735, 739, 261 S. W. 236. In defining the various states of cases in which motion and grounds for new trial is required in order to have the matter reviewed by this court, we find subdivision 4 as follows:

"In ordinary actions tried before the court without a jury if no motion for a new trial is made the only questions arising on the appeal are: Do the pleadings support the judgment and is there any evidence to warrant it? *If there is no evidence to warrant the judgment or if the pleadings do not support the judgment the judgment will be reversed although there is no motion for a new trial and no separation of law and facts.* But if *other* errors are relied on a motion for a new trial is necessary. The same rule applies where the facts are agreed. No separate findings of law and fact are necessary to an appeal. Either of the parties may or may not request this, but if they request it, it must be done within the time allowed for making a motion for a new trial. Errors in these findings need not be assigned in the grounds for a new trial. But such findings as are complained of must be excepted to. The purpose of the separate findings of law and fact is simply to put in the record the grounds upon which the circuit court disposed of the case. Where only his conclusions of law are complained of, the appeal may be prosecuted without bringing up the evidence just as in the case of the special verdict of a jury, the only question

being whether the court entered the proper judgment on the facts found.'' (Italics ours.)

Supporting this theory, the following cases are cited: Helm v. Coffey, 80 Ky. 176; Henderson v. Dupree, 82 Ky. 678; Commonwealth of Kentucky v. King, 86 Ky. 436, 6 S. W. 124, 9 Ky. Law Rep. 653; Owensboro v. Weir, 95 Ky. 166, 24 S. W. 115, 15 Ky. Law Rep. 506; C. N. O. & T. P. Ry. Co. v. Hansford & Son, 125 Ky. 40, 100 S. W. 251, 30 Ky. Law Rep. 1105; Roberts Cotton Oil Co. v. Dobbs & Johnson, etc., 163 Ky. 695, 174 S. W. 485; Broadway & Newport Bridge Co. v. Commonwealth of Kentucky, 173 Ky. 165, 190 S. W. 715; Whitmer v. Cardwell, 194 Ky. 351, 238 S. W. 1048.

After a consideration of the whole case, together with such authority as has been cited and that herein referred to, we have reached the conclusion that there was no evidence to support the judgment, and that it was not incumbent on appellee to file motion and grounds for a new trial in order to have a review of his case by this court.

The judgment is reversed, and cause remanded for a new trial consistent herewith.